EXHIBIT 1

EXHIBIT 1

![us bank logo]

# U.S. BANK® BUSINESS QUICK LOAN NOTE WITH PERSONAL GUARANTY

| U.S. Bank® Quick Loan | Borrower (Exact Legal Name) |
|---|---|
| Account Number: [redacted]<br>Note Date: 07/15/2022<br>Credit Limit: $30,000.00<br>Tax ID Number: [redacted]<br>Advance Account: 000000000000000<br>Payment Account: [redacted]<br><br>Credit Limit not to exceed $250,000 | HURLIMAN HVAC LLC<br>515 DISHMAN MICA RD S<br>SPOKANE VLY, WA 992063643<br><br>Type of Organization: LIMITED LIABILITY COMPANY<br>State of Registration: WA<br>Date Current Owner Began: 12/31/2021<br>Gross Annual Sales: 13,500,000 |

1. **Loan ("Loan").** FOR VALUE RECEIVED, the undersigned borrower ("**Borrower**") promises to pay to the order of U.S. Bank National Association (the "**Bank**"), the principal sum of $30,000.00 (the "**Loan Amount**"), in accordance with the terms of this U.S. Bank® Business Quick Loan Note with Personal Guaranty (this "**Agreement**").

1.1 [ ] **SBA Guaranty.** If this box is checked, the additional terms set forth in this Section 1.1 and the SBA Addendum shall apply. The Loan evidenced by this Agreement is partially guaranteed by the U.S. Small Business Administration ("SBA"), information regarding which can be obtained from the SBA directly or at its website: www.sba.gov. Under this program, if this loan has been accepted by the SBA, the Bank will be repaid in part by the SBA upon a default under this Agreement; it is a condition to the making of this Loan that the SBA accept the Loan. In no event shall the interest rate, fees or other charges under this Agreement exceed the maximum rate or amounts permitted for the SBA loan program or any other maximum rates of interest imposed by applicable law. To the extent feasible, Borrower agrees that Borrower will purchase only American-made equipment and products with the proceeds of this Loan. The SBA Guaranty does not affect the liability of the borrower or any guarantor under this Agreement.

1.2 **Interest.** The unpaid principal balance will bear interest at an annual rate of 5.49 %.

1.3 **Payment Schedule.** Principal and interest are payable in 59 installments of $573.91 each, beginning on August 27, 2022, and on the same date of each consecutive month thereafter (except that if a given month does not have such a date, the last day of such month), plus a final payment equal to all unpaid principal and accrued interest on July 27, 2027, the maturity date.

1.4 [✓] **Automatic Payments.** If this box is checked, then at all times that this Agreement is in effect, Borrower hereby authorizes the Bank to automatically deduct the amount of all payments required under this Agreement from:

[ ✓ ] Borrower's business deposit account number [redacted] held with Bank.
[ ] Borrower's business deposit account held at ____________ (Financial Institution) with Account Number ____________ and Routing Number ____________.

This account is the "Payment Source Account." If there are insufficient funds in the Payment Source Account to pay the required payment, Borrower agrees to pay all fees on the Payment Source Account, which result from the automatic deductions, including any overdraft/NSF charges and any returned payment fee. If for any reason the Bank does not charge the Payment Source Account for payment, or if an automatic payment from the Payment Source Account is reversed, the payment is still due according to this Agreement. The number of withdrawals from the Payment Source Account may be limited, as set out in the customer agreement for that account. The Bank may cancel the automatic payment deduction from the Payment Source Account at any time in its discretion.

1.5 [✓] **Prepayment.** This note may be prepaid at any time upon payment of all principal, interest, fees and expenses in connection with this Agreement. Prepayments of less than all the outstanding principal amount of this Agreement shall be applied upon principal payments in the inverse order of their maturities or in any order, which the Bank elects. Payments due shall be made in lawful money of the United States. If this note is prepaid in full within one year of the Note Date, Borrower agrees to pay the Bank a prepayment fee of 1% of original Loan amount, with a minimum fee of $50.00 and a maximum fee of $100.00.

1.6 **Calculation of Interest and Maximum Rate.** Interest will be computed for the actual number of days principal is unpaid, using a daily factor obtained by dividing the stated interest rate by 360. In no event will the interest rate hereunder exceed that permitted by applicable law. If any interest or other charge is finally determined by a court of competent jurisdiction to exceed the maximum amount permitted by law, the interest or charge shall be reduced to the maximum permitted by law, and the Bank may credit any excess amount previously collected against the balance due or refund the amount to Borrower.

1.7 [ ] **Fees.** If this box is checked, Borrower will pay the Bank the following fees:

| | | | |
|---|---|---|---|
| Filing Public Official: | $0.00 | Origination: | $0.00 |
| VSI Insurance: | $0.00 | | |

1.8 **Late Payment Fee.** Subject to applicable law, if any payment is not made on or before its due date, the Bank may collect a delinquency charge of $15.00 or 5% of the delinquent amount, whichever is less; provided, however, that if any portion of the Loan evidenced by this Agreement has been guaranteed by the U.S. Small Business Administration, the late fee shall not exceed 5% of the delinquent amount. Collection of the late payment fee shall not be deemed to be a waiver of the Bank's right to declare a default hereunder.

1.9 **Loan Purpose.** Borrower represents that the proceeds of the Loan evidenced by this Agreement will be used for business purposes.

1.10 **Advances and Paying Procedure.** The Bank is authorized and directed to credit any of Borrower's accounts with the Bank (or to the account Borrower designates in writing) for all Loans made hereunder, and the Bank is authorized to debit such account or any other account of Borrower with the Bank for the amount of any principal, interest or expenses due under this Agreement or other amount due hereunder on the due date with respect thereto. Payments due under this Agreement and other Loan Documents will be made in lawful money of the United States. All payments may be applied by the Bank to principal, interest and other amounts due under the Loan documents including without limitation reasonable attorney's fees in any order, which the Bank elects. If, upon any request by Borrower to the Bank to issue a wire transfer, there is an inconsistency between the name of the recipient of the wire and its identification number as specified by Borrower, the Bank may, without liability, transmit the payment via wire based solely upon the identification number.

1.11 **Returned Payment Charge.** For each payment made by Borrower to Lender that is returned or rejected (such as a check that is returned unpaid, or an automated transfer that is rejected), Borrower shall pay Lender a returned payment fee of $25.00.

1.12 **Additional Terms.**

2. ☑ **Security Agreement. If this box is checked this is a secured loan and** Borrower grants a security interest in the Collateral (defined below) to the Bank to secure all of Borrower's Obligations (defined below).

2.1 **"Collateral"** means all of the following whether now owned or existing or hereafter acquired by Borrower (or by Borrower with spouse) wherever located (including all documents, general intangibles, additions and accessions, spare and repair parts, special tools, replacements, returned or repossessed goods and books and records relating to the following and all proceeds and products of the following) [describe Collateral in the space provided below]:

| Year | Make | Model | VIN |
|---|---|---|---|
| 2017 | CHEVROLET COMM | MEDIUM DUTY CARGO VAN | [redacted]4628 |

Other Collateral Information: 2500 CARGO VAN 135"

2.2 **Possessory Pledge and Control Agreement.** If the Collateral includes a deposit account or certificate of deposit (collectively, "Deposit Accounts") issued or maintained by U.S. Bank National Association or any of its affiliates as the depositary bank ("Depositary Bank"), the terms of this paragraph apply. The terms and conditions of this Agreement supplement, and are in addition to, any deposit account agreement and related agreements ("Deposit Agreements") that Borrower has with the Depositary Bank. The provisions of this Agreement shall supersede the provisions of the Deposit Agreements only to the extent the provisions herein are inconsistent with the Deposit Agreements, and in all other respects, the Deposit Agreements shall remain in full force and effect. The Borrower agrees to give the Bank control over the Deposit Accounts, meaning the Depositary Bank may comply with any and all orders, notices, requests and other instructions originated by the Bank directing disposition of the Deposit Accounts without any further consent from Borrower, even if such instructions are contrary to any of Borrower's instructions or demands or result in the Depositary Bank dishonoring items which may be presented for payment. The Borrower agrees that instructions from the Bank may include the giving of stop payment orders for any items presented to the Deposit Accounts, instructions to transfer funds to or for the benefit of the Bank or any other person or entity, and instructions to close the Deposit Account. By adopting the following symbols for purposes of authenticating this Agreement, the Depositary Bank specifically agrees to the control agreement terms set forth in this paragraph as well as acknowledges the terms of this Agreement.

/s/ U.S. Bank National Association, for itself and its successors and assigns

2.3 **"Obligations"** means all Borrower's debts, except consumer credit if Borrower is a natural person, liabilities, obligations, covenants, warranties, and duties to the Bank, whether now or hereafter existing or incurred, whether liquidated or unliquidated, whether absolute or contingent, whether arising out of this Agreement or otherwise, including any replacements, amendments, modifications, substitutions, and refinancing of such Obligations.

2.4 **Other Definitions.** The terms set forth in this Agreement shall have the meanings set forth in the Uniform Commercial Code as adopted in the state where the Bank's main office is located, unless otherwise defined herein.

2.5 **Collateral Account.** At Bank's discretion, the Bank may require that all proceeds of Collateral received by Borrower be deposited into a deposit account with the Bank in trust for the benefit of the Bank. Such proceeds shall not be commingled with any other funds or property of Borrower and shall be turned over to the Bank upon and in accordance with the Bank's instructions. All proceeds of Collateral received by the Bank directly or from Borrower will be applied against the Obligations in such order and at such times as determined by Bank.

2.6 ☐ **Law Applicable to SBA Loans.** If this box is checked, the following term applies to the security interest granted herein:

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a. When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with Federal law.

b. Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any Federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

c. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

Copy of Authoritative Version

3. **Warranties/Covenants.** Borrower continuously warrants and agrees as follows:

3.1 **Borrower's Name, Location; Notice of Location Changes.** Unless otherwise disclosed to the Bank in writing prior to the execution of this Agreement, Borrower's name and organizational structure has remained the same during the past five years. The Borrower will continue to use only the name set forth with Borrower's signature unless Borrower gives the Bank prior written notice of any change. Furthermore, Borrower shall not do business under another name nor use any trade name without giving 10 days prior written notice to the Bank. The Borrower will not change its status or organizational structure without the prior written consent of the Bank. The address appearing at the top of this Agreement is Borrower's chief executive office (or residence if Borrower is a sole proprietor).

3.2 **Ownership; Maintenance of Collateral; Restrictions on Liens and Dispositions.** The Borrower is the sole owner of the Collateral, which is free of all liens, claims, other encumbrances and security interests except as permitted in writing by the Bank. The Borrower shall: (i) maintain the Collateral in good condition and repair (reasonable wear and tear excepted), and not permit its value to be impaired; (ii) not permit waste, removal or loss of identity of the Collateral; (iii) keep the Collateral free from all liens, executions, attachments, claims, encumbrances and security interests (other than the Bank's paramount security interest and those permitted in writing by the Bank); (iv) defend the Collateral against all claims and legal proceedings by persons other than the Bank; (v) pay and discharge when due all taxes, levies and other charges or fees upon the Collateral except for payment of taxes contested by Borrower in good faith by appropriate proceedings so long as no levy or lien has been imposed upon the Collateral; (vi) not lease, sell or transfer the Collateral to any party nor move it to any new location outside of the ordinary course of business; (vii) not permit the Collateral, without the consent of the Bank, to become a fixture or an accession to other goods; and (viii) not permit the Collateral to be used in violation of any applicable law, regulation or policy of insurance.

3.3 **Maintenance of Security Interest; Purchase Money Security Interests.** The Borrower shall take any action requested by the Bank to preserve the Collateral and to establish the value and the priority of, to perfect, to continue the perfection of or to enforce the Bank's interest in the Collateral and the Bank's rights under this Agreement; and shall pay all costs and expenses related thereto to the fullest extent permitted by applicable law. The Borrower hereby authorizes the Bank to take any and all actions described above and in place of Borrower with respect to the Collateral and hereby ratifies any such actions the Bank has taken prior to the date of this Agreement and hereafter, which actions may include, without limitation, filing UCC financing statements and obtaining or attempting to obtain control agreements from holders of the Collateral. The Borrower and the Bank intend to maintain the full effect of any purchase money security interest granted in favor of the Bank notwithstanding the fact that the Collateral so purchased is also pledged as security for other Obligations under this Agreement.

3.4 **Collateral Inspections; Modifications and Changes in Collateral.** At reasonable times, the Bank may examine the Collateral and Borrower's records pertaining to it, wherever located, and make copies of such records at Borrower's expense; and Borrower shall assist the Bank in so doing. Without the Bank's prior written consent, Borrower shall not alter or modify any Collateral, except for alterations to equipment, which do not materially affect its value. The Borrower shall promptly notify the Bank in writing of any material change in the condition of the Collateral and of any change in location of the Collateral.

3.5 **Insurance.** The Borrower will maintain insurance to such extent, covering such risks and with such insurers as is usual and customary for businesses operating similar properties, and as is satisfactory to the Bank, including insurance for fire and other risks insured against by extended or comprehensive coverage, public liability insurance and workers' compensation insurance; and will designate the Bank as loss payee with a "Lender's Loss Payable" endorsement on any casualty policies and take such other action as the Bank may reasonably request to ensure that the Bank will receive (subject to no other interests) the proceeds of any insurance covering the Collateral. Borrower may obtain such insurance from a producer or insurer of Borrower's choice. The Borrower hereby assigns all insurance proceeds and irrevocably directs, while any Obligations remain unpaid, any insurer to pay to the Bank the proceeds of all such insurance and any premium refund; and authorizes the Bank to endorse Borrower's name to effect the same, to make, adjust or settle, in Borrower's name, any claim on any insurance policy relating to the Collateral; and at the option of the Bank, to apply such proceeds and refunds to the Obligations or to restoration of the Collateral, returning any excess to Borrower. In the event of any failure of Borrower to obtain or maintain any insurance required hereunder, the Bank shall have the authority, but not the obligation, to obtain any such insurance coverage, and Borrower shall immediately reimburse the Bank for the cost thereof, together with interest on such amount at the highest rate of interest then accruing on any of the Obligations.

3.6 **Financial Information.** The Borrower will (i) maintain accounting records in accordance with generally recognized and accepted principles of accounting consistently applied throughout the accounting periods involved; (ii) provide the Bank with such information concerning its business affairs and financial condition (including insurance coverage) as the Bank may reasonably request; and (iii) without request, provide the Bank with annual financial statements prepared by an accounting firm acceptable to the Bank within 120 days of the end of each fiscal year.

3.7 **Guaranties.** If Borrower is not a sole proprietor, then all amounts Borrower now or later owes to Lender shall be guaranteed by certain "Guarantors". These Guarantors include each shareholder, partner and member owning 20% or more of the ownership interests in Borrower. Lender may also require other Guarantors. For purposes of calculating percentages of ownership, each married household shall be considered to constitute one owner. The failure of any such person to sign a guaranty or its equivalent shall not impair the obligation of Borrower or any other Guarantor to pay all amounts owing from time to time under the Loans.

3.8 **Credit Balances; Security Interest; Setoff.** As additional security for the payment of the Loan or any document securing or related to the Loan (collectively the "Loan Documents") and any other Obligation, Borrower hereby grants to the Bank a security interest in, a lien on and an express contractual right to set off against all depository account balances, cash and any other property of Borrower now or hereafter in the possession of the Bank and the right to refuse to allow withdrawals from any account (collectively "Setoff"). The Bank may, at any time upon the occurrence of a default hereunder (notwithstanding any notice requirements or grace/cure periods under this or other agreements between Borrower and the Bank) Setoff against the Obligations whether or not the Obligations (including future installments) are then due or have been accelerated, all without any advance or contemporaneous notice or demand of any kind to Borrower, such notice and demand being expressly waived.

3.9 **Prohibition of Executive Officer Status.** Borrower is not an Executive Officer of Bank as defined under 12 C.F.R. §215.2, if Borrower should become an Executive Officer of Bank, Borrower understands Bank reserves the right to require Borrower to repay on demand, any amount outstanding on the loan made under this Agreement.

4. **Default.** Notwithstanding any cure periods described below, Borrower shall immediately notify the Bank in writing when Borrower obtains knowledge of the occurrence of any event of default specified below. Regardless of whether Borrower has given the required notice, the occurrence of one or more of the following shall constitute a default:

4.1 **Nonpayment.** The Borrower shall fail to pay (i) any interest due or any fees, charges, costs or expenses under this Agreement by five (5) days after the same becomes due; or (ii) any principal amount of this Agreement when due.

4.2 **Nonperformance.** The Borrower or any Guarantor of Borrower's Obligations to the Bank ("Guarantor") shall fail to perform or observe any agreement, term, provision, condition, or covenant (other than a default occurring under 4.1, 4.3, 4.4, 4.5, 4.6, 4.7 or 4.8 of this paragraph 4) required to be performed or observed by Borrower or any Guarantor hereunder or under any other agreement with or in favor of the Bank.

4.3 **Misrepresentation.** Any financial information, statement, certificate, representation or warranty given to the Bank by Borrower or any Guarantor (or any of their representatives) in connection with entering into this Agreement and/or borrowing hereunder, or required to be furnished under the terms hereof, shall prove untrue or misleading in any material respect (as determined by the Bank in the exercise of its judgment) as of the time when given.

4.4 **Default on Other Obligations.** The Borrower or any Guarantor shall be in default under the terms of any loan agreement, promissory note, lease, conditional sale contract or other agreements, document or instrument evidencing, governing or severing any indebtedness owing by Borrower or any Guarantor to the Bank or any indebtedness in excess of $10,000 owing by Borrower to any third party, and the period of grace, if any, to cure said default shall have passed.

4.5 **Judgments.** Any judgment shall be obtained against Borrower or any Guarantor which, together with all other outstanding unsatisfied judgments against Borrower (or such Guarantor), shall exceed the sum of $10,000 and shall remain unvacated, unbonded or unstayed for a period of thirty (30) days following the date of entry thereof.

4.6 **Inability to Perform; Bankruptcy/Insolvency.** (i) The Borrower or any Guarantor shall die or cease to exist, or (ii) any Guarantor shall attempt to revoke any guaranty of the Obligations described herein, or any guaranty becomes unenforceable in whole or in part for any reason; or (iii) any bankruptcy, insolvency or receivership proceedings, or an assignment for the benefit of creditors, shall be commenced under any Federal or state law by or against Borrower or any Guarantor; or (iv) Borrower or any Guarantor shall become the subject of any out-of-court settlement with its creditors; or (v) Borrower or any Guarantor is unable or admits in writing its inability to pay its debts as they mature.

4.7 **Adverse Change; Insecurity.** (i) There is a material adverse change in the business, properties, financial condition or affairs of Borrower or any Guarantor, or in any Collateral securing the Obligations; or (ii) the Bank in good faith deems itself insecure.

4.8 **SBA Related Defaults.** If Section 1.1 of this Agreement has been checked, so as to indicate that a portion of the Loan is to be guaranteed by the SBA, the SBA shall fail to guarantee at least 50% of the indebtedness evidenced by this Agreement, or shall cancel or otherwise limit its guarantee or give the Bank notice of its intention to do so.

5. **Termination of Loans; Additional Bank Rights.** Upon the occurrence of any of the events identified in paragraph 4, the Bank may at any time (notwithstanding any notice requirements, or grace/cure periods under this or other agreements between Borrower and the Bank) (i) immediately terminate its obligation, if any, to make additional loans to Borrower; (ii) set off against all depository account balances, cash and any other property now or hereafter in the possession of the Bank; and/or (iii) take such other steps to protect or preserve the Bank's interest in any collateral, including without limitation, advancing funds to protect any Collateral and insuring Collateral at Borrower's expense; all without demand or notice of any kind, all of which are hereby waived.

6. **Acceleration of Obligations.** Upon the occurrence of any of the events identified in paragraphs 4.1 through 4.5, 4.7 and 4.8 and the passage of any applicable cure periods, the Bank may at any time thereafter, by written notice to Borrower, declare the unpaid principal balance of any Obligations, together with the interest accrued thereon and other amounts accrued hereunder, to be immediately due and payable; and the unpaid balance shall thereupon be due and payable, all without presentation, demand, protest or further notice of any kind, all of which are hereby waived, and notwithstanding anything to the contrary contained herein. Upon the occurrence of any event under paragraph 4.6, the unpaid principal balance of any Obligations, together with all interest accrued thereon and other amounts accrued hereunder, shall thereupon be immediately due and payable, all without presentation, demand, protest or notice of any kind, all of which are hereby waived, and notwithstanding anything to the contrary contained herein.

7. **Cumulative Remedies; Notice; Waiver.** The Bank may enforce its rights and remedies under this Agreement upon default. In addition to the remedies for default set forth in this Agreement, the Bank upon default shall have all other rights and remedies for default provided by the Uniform Commercial Code, as well as any other applicable law and this Agreement, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO REPOSSESS, RENDER UNUSABLE AND/OR DISPOSE OF THE COLLATERAL WITHOUT JUDICIAL PROCESS. The rights and remedies specified herein are cumulative and are not exclusive of any rights or remedies, which the Bank would otherwise have. With respect to such rights and remedies:

7.1 **Assembling Collateral; Storage; Use of Borrowers' Name/Other Property.** The Bank may require Borrower to assemble the Collateral and to make it available to the Bank at any convenient place designated by the Bank. The Borrower recognizes that the Bank will not have an adequate remedy in Law if this obligation is breached and accordingly, Borrower's obligation to assemble the Collateral shall be specifically enforceable. The Bank shall have the right to take immediate possession of the Collateral, and Borrower irrevocably authorizes the Bank to enter any of the premises wherever any Collateral shall be located, and to store, repair, maintain, assemble, manufacture, advertise and sell, lease or dispose of (by public sale or otherwise) the same on said premises until sold, all without charge or rent to the Bank. Further, Borrower releases the Bank from obtaining a bond or surety with respect to any repossession and/or disposition of the Collateral.

7.2 **Notice of Disposition.** Written notice, when required by law, sent to any address of Borrower in this Agreement, at least ten (10) calendar days (counting the day of sending) before the date of a proposed disposition of the Collateral is reasonable notice, but less notice may be reasonable under the circumstances.

7.3 **Possession of Collateral/Commercial Reasonableness.** The Bank shall not, at any time, be obligated to either take or retain possession or control of the Collateral. With respect to Collateral in the possession or control of the Bank, Borrower and the Bank agree that as a standard for determining commercial reasonableness, the Bank need not liquidate, collect, sell or otherwise dispose of any of the Collateral if the Bank believes, in good faith, that disposition of the Collateral would not be commercially reasonable, would subject the Bank to third-party claims or liability, that other potential purchasers could be attracted or that a better price could be obtained if the Bank held the Collateral for up to 2

Copy of Authoritative Version

years. The Bank may sell Collateral without giving any warranties and may specifically disclaim any warranties of title or the like. Furthermore, the Bank may sell the Collateral on credit (and reduce the Obligations only when payment is received from the buyer), at wholesale and/or with or without an agent or broker; and the Bank need not complete, process, repair, clean-up or otherwise prepare the Collateral prior to disposition.

If the purchaser fails to pay for the Collateral, the Bank may resell the Collateral and Borrower shall be credited with the cash proceeds of the sale. The Bank may comply with any applicable state or federal law requirements in connection with a disposition of the Collateral and compliance will not be considered to adversely affect the commercial reasonableness of any sale of the Collateral.

7.4 **Waiver by the Bank.** The Bank may permit Borrower to attempt to remedy any default without waiving its rights and remedies hereunder, and the Bank may waive any default without waiving any other subsequent or prior default by Borrower. Furthermore, delay on the part of the Bank in exercising any right, power or privilege hereunder or at law shall not operate as a waiver thereof, nor shall any single or partial exercise of such right, power or privilege preclude other exercise thereof or the exercise of any other right, power or privilege. No waiver or suspension shall be deemed to have occurred unless the Bank has expressly agreed in writing specifying such waiver or suspension.

7.5 **Borrowers in Louisiana.** Bank may recover Collateral by ordinary, executory, or other legal process. For the purpose of Executory process under Louisiana law, **BORROWER ACKNOWLEDGES TO BE INDEBTED TO BANK AND CONFESS JUDGMENT IN BANK'S FAVOR** for the full amount of Borrower's present and future Obligations. To the extent permitted under applicable Louisiana law, including the Code of Civil Procedure ("Code"), Borrower consents to the use of executory process foreclosure remedies and Borrower additionally waives: (a) the benefit of appraisal as provided under Articles 2332, 2336, 2723, and 2724 of the Code, and all other laws concerning appraisal upon judicial sale; (b) the demand and three (3) days' delay provided under Articles 2369 and 2721 of the Code; (c) the notice of seizure as provided under Article 2293 of the Code; (d) the three (3) days' delay provided under Articles 2331 and 2722 of the Code; and (e) all other benefits provided under Articles 2331, 2722, and 2723 of the Code and all other Articles not specifically mentioned above. Borrower agrees that Bank may appoint itself or someone else as keeper of the Collateral.

8. **Waivers; Relationship to Other Documents.** All Borrowers, endorsers, sureties and guarantors waive presentment, protest, demand, and notice of dishonor. The warranties, covenants and other obligations of Borrower (and the rights and remedies of the Bank) in this Agreement and all related documents are intended to be cumulative and to supplement each other. Guarantor(s) waive notice of acceptance hereof, presentment and protest of any instrument and notice thereof, notice of default, notice of intent to accelerate and notice of acceleration and all other notices to which the Guarantor(s) might otherwise be entitled; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law and any defense to the Guaranty based on impairment of collateral or on surety-ship defenses of every type. **For Borrowers and Guarantors in Georgia, North Carolina, Texas, or Virginia the following waivers apply:**

**Borrowers and Guarantors in Texas** further waive any defense under § 3-605 of the Uniform Commercial Code of Texas, Rule 31 of the Texas Rules of Civil Procedure, § 17.001 of the Texas Civil Practice and Remedies Code, and Chapter 43 of the Texas Civil Practice and Remedies Code; any notice of default, notice of intent to accelerate, and notice of acceleration; and any right to exoneration or marshaling and any and all rights under Sections 51.003, 51.004 and 51.005 of the Texas Property Code, and under any amendments, re-codifications, supplements or successor statute or law of or to any such statute or law.

**Borrowers and Guarantors in Georgia** further waive any right they may have, by statute (such as O.C.G.A. Section 10-7-24) or otherwise, to require Lender to seek recourse first against Borrower or any other person, or to realize upon any person or collateral, as a condition precedent to enforcing Guarantor's liability and obligations under the Guaranty.

**Borrowers and Guarantors in North Carolina** further waive all rights and defenses arising pursuant to North Carolina General Statutes Section 26-7; and any and all defenses, including without limitation, any and all defenses which the Borrower or any other party may have to the fullest extent permitted by law, any defense to this Guaranty based on impairment of collateral or on surety-ship defenses of every type; and any right to exoneration or marshaling.

**Borrowers and Guarantors in Virginia** further waive any rights under Virginia Code Sections 49-25 and 49-26 to require Lender to bring suit against the Borrower or forfeit Lender's rights against Guarantor.

9. **Expenses and Attorneys' Fees.** The Borrower will reimburse the Bank and any participant in the Obligations ("Participant") for all attorneys' fees and all other costs, fees and out-of-pocket disbursements incurred by the Bank or any Participant in connection with the preparation, execution, delivery, administration, defense and enforcement of this Agreement, including fees and costs related to any waivers or amendments with respect thereto (examples of costs and fees included but are not limited to fees and costs for: filing, perfecting or confirming the priority of the Bank's lien, title searches or insurance, appraisals and other reviews related to Borrower, any collateral or the loans, if requested by the Bank) to the fullest extent permitted by applicable law. The Borrower will also reimburse the Bank and any Participant for all costs of collection before and after judgment, and the costs of preservation and/or liquidation of any collateral to the fullest extent permitted by applicable law. For Borrowers in Georgia, attorneys' fees will be limited to 15% of the principal and interest outstanding.

10. **Applicable Law; Interpretation; Joint Liability.** **This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Ohio, except to the extent superseded by Federal law. For Maryland Borrowers and Guarantors, matters not governed by the laws of Ohio and federal law shall be governed by the laws of Maryland, particularly Title 12, Subtitle 10 of the Maryland Commercial Law Article, but only to the extent such law is not preempted by federal law**. THE BORROWER HEREBY CONSENTS TO THE EXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT SITUATED IN THE COUNTY OR FEDERAL JURISDICTION OF THE BANK'S BRANCH WHERE THE LOAN WAS ORIGINATED, AND WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS, WITH REGARD TO ANY ACTIONS, CLAIMS, DISPUTES OR PROCEEDINGS RELATING TO THIS NOTE, THE COLLATERAL, ANY OTHER LOAN DOCUMENT, OR ANY TRANSACTIONS ARISING THEREFROM, OR ENFORCEMENT AND/OR INTERPRETATION OF ANY OF THE FOREGOING. Invalidity of any provisions of this Agreement shall not affect any other provision. Nothing herein shall affect the Bank's rights to serve process in any manner permitted by law, or limit the Bank's right to bring proceedings against Borrower in the competent courts of any other jurisdiction or jurisdictions. This Agreement, and any amendment hereto (regardless of when executed) will be deemed effective and accepted only upon the Bank's receipt of the executed originals thereof. If there is more than one Borrower, the liability of Borrowers shall be joint and several (solidary), and the reference to "Borrower" shall be deemed to refer to all Borrowers. When SBA is the holder, this Note will be interpreted and enforced under Federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any Federal

immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt Federal law. **For Borrowers and Guarantors located in Georgia:** EACH GUARANTOR IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT SITTING IN GEORGIA, OVER ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY. GUARANTOR IRREVOCABLY WAIVES, TO THE FULLEST EXTENT IT MAY EFFECTIVELY DO SO UNDER APPLICABLE LAW, ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURT AND ANY CLAIM THAT THE SAME HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. GUARANTOR HEREBY CONSENTS TO ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING, (I) BY MAILING A COPY THEREOF BY REGISTERED AND CERTIFIED MAIL, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, TO THE GUARANTOR'S ADDRESS SHOWN BELOW OR AS NOTIFIED TO LENDER OR (II) BY SERVING THE SAME UPON THE GUARANTOR IN ANY OTHER MANNER OTHERWISE PERMITTED BY LAW, AND AGREES THAT SUCH SERVICE SHALL IN EVERY RESPECT BE DEEMED EFFECTIVE SERVICE UPON THE GUARANTOR. **For Borrowers located in Louisiana:** Borrower agrees that venue is proper in the parish or federal district of the bank's branch where the loan was originated with regard to any actions, claims, disputes or proceedings relating to this note, the collateral, any other loan document, or any transactions arising therefrom, or enforcement and/or interpretation of any of the foregoing.

11. **Participations/Guarantors/Successors.** The Bank may, at its option, sell all or any interests in this Agreement to other financial institutions (the "Participant"), and in connection with such sales (and thereafter) disclose any financial information the Bank may have concerning Borrower to any such Participant or potential Participant. From time to time, the Bank may, in its discretion and without obligation to Borrower, any Guarantor or any other third party, disclose information about Borrower and this Loan to any Guarantor, surety or other accommodation party. This provision does not obligate the Bank to supply any information or release Borrower from its obligation to provide such information, and Borrower agrees to keep all Guarantors advised of its financial condition and other matters which may be relevant to the Guarantors' obligations to the Bank. The rights, options, powers and remedies granted in this Agreement will extend to the Bank and to its successors and assigns, will be binding upon Borrower and its successors and assigns and will be applicable hereto and to all renewals and/or extensions hereof.

12. **Copies; Entire Agreement; Modification.** The Borrower hereby acknowledges the receipt of a copy of this Agreement. **IMPORTANT: READ BEFORE SIGNING. THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING AND EXPRESSING CONSIDERATION ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED. THE TERMS OF THIS AGREEMENT MAY ONLY BE CHANGED BY ANOTHER WRITTEN AGREEMENT. THIS NOTICE SHALL ALSO BE EFFECTIVE WITH RESPECT TO ALL OTHER CREDIT AGREEMENTS NOW IN EFFECT BETWEEN BORROWER AND THE BANK. A MODIFICATION OF ANY OTHER CREDIT AGREEMENTS NOW IN EFFECT BETWEEN BORROWER AND THE BANK, WHICH OCCURS AFTER RECEIPT BY BORROWER OF THIS NOTICE, MAY BE MADE ONLY BY ANOTHER WRITTEN INSTRUMENT. ORAL OR IMPLIED MODIFICATIONS TO SUCH CREDIT AGREEMENTS ARE NOT ENFORCEABLE AND SHOULD NOT BE RELIED UPON.**

13. **Waiver of Jury Trial. TO THE EXTENT PERMITTED BY LAW, BORROWER AND BANK HEREBY JOINTLY AND SEVERALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO ANY OF THE LOAN DOCUMENTS, THE OBLIGATIONS THEREUNDER, ANY COLLATERAL SECURING THE OBLIGATIONS, OR ANY TRANSACTION ARISING THEREFROM OR CONNECTED THERETO. BORROWER AND BANK EACH REPRESENTS TO THE OTHER THAT THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY GIVEN.**

**Waiver of Jury Trial in Georgia.** This provision does not apply to Georgia borrowers.

**Waiver of Jury Trial in Texas:** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE BORROWER(S) AND GUARANTOR(S) EACH HEREBY KNOWINGLY, VOLUNTARILY, AND INTENTIONALLY, AFTER AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL, (A) WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING IN CONNECTION WITH THIS NOTE, ANY OF THE OBLIGATIONS OF THE BORROWER(S) AND GUARANTOR(S) TO LENDER, AND ALL MATTERS CONTEMPLATED HEREBY AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH AND (B) AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CONNOT BE, OR HAS NOT BEEN WAIVED. THE BORROWER(S) AND GUARANTOR(S) EACH CERTIFY THAT NEITHER IT NOR ANY OF ITS REPRESENTATIVES, AGENTS, OR COUNSEL HAVE REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT IN THE EVENT OF ANY SUCH PROCEEDING SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

14. **Attachments.** All documents attached hereto, including any appendices, schedules, riders, and exhibits to this Business Loan Note and Security Agreement with Guaranty, are hereby expressly incorporated by reference.

## IMPORTANT INFORMATION

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT: To help the government fight the funding of terrorism and money laundering activities, federal law requires financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.**

**CELLULAR PHONE CONTACT POLICY: By providing U.S. Bank with a telephone number for a cellular phone or other wireless device, each Signer expressly consents to receiving communications - including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system - from U.S. Bank (including its affiliates and agents) at that number. This express consent applies to each such telephone number provided to U.S. Bank now or in the future, and permits such calls regardless of their purpose. Calls and messages may incur access fees from a cellular provider.**

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your personal credit report**

**MISSOURI NOTICE: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING PROMISES TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE, REGARDLESS OF THE LEGAL THEORY UPON WHICH IT IS BASED THAT IS IN ANY WAY RELATED TO THE CREDIT AGREEMENT. TO PROTECT YOU (BORROWER(S)) AND US (CREDITOR) FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS WE REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS AGREEMENT, ANY GUARANTY AND ANY OTHER RELATED DOCUMENT WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**WASHINGTON NOTICE: UNDER WASHINGTON LAW, ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE.**

**NEBRASKA NOTICE: A CREDIT AGREEMENT MUST BE IN WRITING TO BE ENFORCEABLE UNDER NEBRASKA LAW. TO PROTECT BORROWER AND LENDER FROM MISUNDERSTANDINGS OR DISAPPOINTMENTS, ANY CONTRACT, PROMISE, UNDER TAKING OR OFFER TO FORBEAR REPAYMENT OF MONEY OR TO MAKE ANY OTHER FINANCIAL ACCOMMODATION IN CONNECTION WITH THIS LOAN OF MONEY OR GRANT OR EXTENSION OF CREDIT, OR ANY AMENDMENT OF, CANCELLATION OF, WAIVER OF, OR SUBSTITUTION FOR ANY OR ALL OF THE TERMS OR PROVISIONS OF ANY INSTRUMENT OR DOCUMENT EXECUTED IN CONNECTION WITH THIS LOAN OR MONEY OR GRANT OR EXTENSION OF CREDIT MUST BE IN WRITING TO BE EFFECTIVE.**

**OREGON NOTICE: UNDER OREGON LAW, MOST AGREEMENTS, PROMISES, AND COMMITMENTS MADE BY LENDERS AFTER OCTOBER 3, 1989, CONCERNING LOANS AND OTHER CREDIT EXTENSIONS THAT ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES, OR SECURED SOLELY BY THE BORROWER'S RESIDENCE, MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY THE LENDER TO BE ENFORCEABLE.**

## PERSONAL GUARANTY

**Guaranty.** For value received, and to induce the Bank to extend or continue credit to Borrower, the undersigned GUARANTOR ("Guarantor," whether one or more) HEREBY UNCONDITIONALLY AND IRREVOCABLY GUARANTEES PAYMENT OF AND PROMISES TO PAY TO THE BANK THE OBLIGATIONS, whether or not the Obligations are valid and enforceable against Borrower, whenever they become due, whether on demand, at maturity or by reason of acceleration, or at the time the Guarantor shall die or become the subject of any bankruptcy, insolvency or incompetency proceeding. In addition to the Obligations under the above Agreement, for purposes of this Guaranty, the term "Obligations" shall also include all interest, costs and attorneys fees (including fees of inside counsel) incurred by the Bank in attempting to realize upon any collateral securing this Guaranty, or to enforce this Guaranty. The Guarantor agrees that the Bank does not have to take any steps whatsoever to realize upon the Collateral, or proceed against Borrower or any other party before or after proceeding against the Guarantor, and the Guarantor waives any claim of marshalling of assets. The Guarantor also agrees the Bank may renew, amend, modify or extend any existing or future Obligations (including making additional advances, or changing the amount, time or manner of payment of any Obligations), waive compliance with any provisions or documents evidencing any of the Obligations or settle, release, compromise or subordinate any Obligation, any Collateral, any collateral securing this Guaranty, or the liability of any other party responsible for payment of the Obligations. The Guarantor expressly waives all right of setoff and counterclaims, all rights to plea discussion, as well as diligence in collection or prosecution, presentment, demand of payment or performance, protest, notice of dishonor, nonpayment or nonperformance of any Obligation. The Guarantor warrants and represents to the Bank that the Guarantor has and will examine the financial condition of Borrower as the Guarantor deems necessary; and specifically relieves the Bank of any duty or responsibility to advise the Guarantor of any change in Borrower's financial condition. The Guarantor grants to the Bank a security interest in all Guarantor's depository account balances, cash and any other property now or hereafter in the possession of or under the control of the Bank to secure payment under this Guaranty and grants the Bank a contractual right to setoff, without notice or demand, amounts due hereunder against all depository account balances, cash and other property now or hereafter in the possession of the Bank. If this Guaranty has been signed by more than one Guarantor, the obligations of each Guarantor shall be joint and several (solidary) with all other Guarantors.

**Kentucky Guarantors.** The provisions of this paragraph apply to any Guarantor who resides in the State of Kentucky. Notwithstanding the provisions of this Guaranty, the maximum aggregate liability of the Guarantor under this Guaranty shall not exceed $ 30,000.00 ("Guarantied Principal"); plus any and all interest accruing on the Guarantied Principal and all fees, charges and costs of collecting the Guarantied Principal or otherwise enforcing the Bank's rights under this Guaranty, including without limitation, reasonable attorneys' fees and expenses (all of the foregoing hereafter referred to as "Guarantied Obligations"). This Guaranty shall remain in full force and effect until, and shall terminate (as used in Kentucky Revised Statutes §371.065, as amended) on the earlier of (a) the day following the date of payment in full upon maturity of the Guarantied Obligations; or (b) N/A, 20___; provided, however, that the termination of this Guaranty on such termination date shall not affect in any manner the liability of the Guarantor with respect to (1) the Guarantied Obligations which are created or incurred prior to such termination date ("Prior Obligations"), or (2) extension or renewals of, interest accruing on, or fees, costs or expenses incurred with respect to, such Prior Obligations prior to, on or after such termination date.

**Third Party Pledge.** For value received, and to induce Bank to extend credit or other financial accommodations now or in the future to Borrower, the Guarantor agrees to pledge any interest Guarantor has or may acquire in the Collateral to secure the Obligations.

When SBA is the holder, the Note and this Guarantee will be interpreted and enforced under Federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any Federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claims of SBA, or preempt Federal law.

**The Guarantor and the Bank hereby jointly and severally waive any and all rights to trial by jury in any action or proceeding relating to this Guaranty and the Obligations hereunder; and each represent to the other that this waiver is knowingly, willingly and voluntarily given. The waiver of jury trial does not apply to Georgia Guarantors.**

THIS COMMUNITY PROPERTY **CONSENT** applies to guarantors residing in the community property states of **Arizona, Idaho, Nevada, New Mexico,** and **Washington**. PURPOSE AND CONSENT. Each Guarantor who is married represents that this obligation is incurred in the interest of his or her marriage or family. The spouse of each Guarantor who has not signed above as a Guarantor consents to the Guarantor entering into this Guaranty, but said spouse of each Guarantor is not a party to the above Guaranty.

**Signatures Required**

THIS COMMUNITY PROPERTY **NOTICE** applies to guarantors residing in the community property states of **California, Louisiana, Texas,** and **Wisconsin**. PURPOSE AND NOTICE. Each Guarantor who is married represents that this obligation is incurred in the interest of his or her marriage or family. The spouse of each Guarantor who has not signed above as a Guarantor accepts this notice of the Guarantor entering into this Guaranty, but said spouse of each Guarantor is not a party to the above Guaranty.

**Signatures Required**

| | |
|---|---|
| Guarantor<br><br>Date | Guarantor's Spouse<br><br>Date |
| Guarantor<br><br>Date | Guarantor's Spouse<br><br>Date |
| Guarantor<br><br>Date | Guarantor's Spouse<br><br>Date |
| Guarantor<br><br>Date | Guarantor's Spouse<br><br>Date |
| Guarantor<br><br>Date | Guarantor's Spouse<br><br>Date |

Copy of Authoritative Version

## SIGNATURES

By signing this Agreement, each person ("Signer"), individually and on behalf of Borrower, requests the indicated services or credit products from Lender. Each Signer is authorized to sign on behalf of Borrower and will provide business resolutions to Lender upon request. Each Signer has read and agrees to all applicable provisions, including the personal guaranty and grant of a security interest in deposit accounts. Each Signer authorizes Lender to (1) obtain credit records and other credit and employment information about the Signers personally and the Borrower (now and in the future), including from state and federal tax authorities, for deciding whether to approve the requested credit and for later periodic account review and collection purposes, and (2) furnish information about the Borrower and the Guarantors to credit bureaus, other Signers, and other persons who claim to be authorized by Borrower or the Guarantors to receive such information. Borrower and each Signer guaranty that all information in this Agreement is correct and agree to notify Lender if any information changes. All loans shall be used for business purposes only.

**BY SIGNING BELOW, EACH SIGNER AGREES TO BE PERSONALLY RESPONSIBLE FOR ANY CREDIT GRANTED PURSUANT TO THIS AGREEMENT.** This Agreement constitutes a Guaranty under which each individual signing is a Guarantor, and individually guarantees the payment of all present and future obligations of Borrower to Lender in accordance with the provisions in this Agreement.

**IMPORTANT NOTICE:** EACH BUSINESS OWNER MUST VERIFY THE INFORMATION BELOW AND SIGN ON BEHALF OF THE BUSINESS AND AS A PERSONAL GUARANTOR.

**NEW YORK NOTICE: A CONSUMER REPORT MAY BE ORDERED ON YOU (THE BUSINESS OWNER AND GUARANTOR) IN CONNECTION WITH THIS APPLICATION FOR CREDIT. IF YOU ASK, WE (CREDITOR) WILL TELL YOU WHETHER OR NOT ONE WAS ORDERED AND IF ONE WAS, THE NAME AND ADDRESS OF THE CONSUMER REPORTING AGENCY THAT PROVIDED IT. SUBSEQUENT CONSUMER REPORTS MAY BE REQUESTED OR USED IN CONNECTION WITH AN UPDATE, RENEWAL OR EXTENSION OF THE CREIDT APPLIED FOR WITHOUT FURTHER NOTICE TO YOU.**

**TEXAS NOTICE: This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.**

Copy of Authoritative Version

### Personal Guarantor(s) Information:

KYLON L GIENGER
5515 SKYVIEW DR
MISSOULA, MT 598033315
Percent of Ownership: 100

TELIAH D GIENGER
5515 SKYVIEW DR
MISSOULA, MT 598033315
Percent of Ownership: 0

E-signed by KYLON L GIENGER on 07/15/2022 at 4:30 PM Central Daylight Time.

| Signature of Business Owner & Guarantor | Date | Printed Name | Title |
|---|---|---|---|
| [signature] | | KYLON L GIENGER | PRESI |

E-signed by TELIAH D GIENGER on 07/15/2022 at 4:30 PM Central Daylight Time.

| Signature of Business Owner & Guarantor | Date | Printed Name | Title |
|---|---|---|---|
| [signature] | | TELIAH D GIENGER | OTHER |
| | | | |
| | | | |
| | | | |

# EXHIBIT 2



EXHIBIT 2

compass Driving Records

*Home of the "Smart MVR" ™*

PO Box 100, Woodlyn, PA 19094
Tel: 866.454.3238 • www.IMVRS.com

## WA Online Vehicle Report

**Order Date: 7/1/2026**

**Ordered for:** U.S. Bank NA
**VIN Searched:** 1GCWGAFF1H1164628
**Plate Searched:**
**Title Searched:**
**Searched on:** 7/1/2026
**Control #:** [redacted]

**Reference:** [redacted]
**VIN:** 1GCWGAFF1H1164628
**Plate:** [redacted]
**Title#:**

### Vehicle Information

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Year:** | 2017 | **Make/Model:** | CHEV/ EXPRESS G2500 | **Body:** | CG | **Vin:** | 1GCWGAFF1H1164628 |
| **Color:** | | **Mot Power:** | | **Veh Type:** | | **Plate:** | [redacted] |
| **VLF Class:** | | **UL Wt/Axels:** | 5296 | **GVW:** | 0 | **Plate Type:** | STANDARD PASSENGER |
| **Asterisk Yr:** | | **Title Issued:** | 08/04/2022 | **Reg Issued:** | 07/25/2025 | **Title Num:** | [redacted] |
| **Odometer:** | 89,122 | **Purchase Price:** | | **Total Fee:** | 118.00 | **Reg Expires:** | 07/15/2026 |
| **First Sold:** | | **Purchase Date:** | | **Last Tran:** | 04/27/2026 | | |

### Legal Owners

**Name:** US BANK NATIONAL ASSOCIATION
Address: 1850 OSBORN AVE
OSHKOSH, WI 54902

### Registered Owners

**Name:** HURLIMAN HVAC LLC / KYLON LANG GIENGER
Address: 5515 SKYVIEW DR
MISSOULA, MT 59803

### Additional State Information

TITLE STATUS: ISSUED
GVWR: 2
VALUE CODE: 21358.7100
VALUE YEAR: 2017
LAST TRANSACTION: 4/27/2026 VEHICLE POSTCARD RENEWAL
PREVIOUS TRANSACTION: 7/25/2025 VEHICLE RENEWAL
COUNTY: 17
MONTHS OF REG: 12
REGISTRATION NUMBER: [redacted]
TAB NUMBER: [redacted]
REGISTRATION NUMBER: [redacted]
TAB NUMBER: [redacted]
REGISTRATION NUMBER: [redacted]
TAB NUMBER: [redacted]
REGISTRATION NUMBER: [redacted]
TAB NUMBER: [redacted]
TITLE ISSUED
ON-ROAD REGISTRATION
QUESTIONABLE ADDRESS

**End of report**